# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

### *NOT FOR PUBLICATION*

| | |
|---|---|
| In re | |
| **DANIEL BRIAN BOUDETTE,** | |
| Debtor. | Case No. **20-20147-BPH** |
| | |
| **TAMMY OSKERSON,** | |
| Plaintiff. | |
| -vs- | Adv. No. **20-02012-BPH** |
| **DANIEL BRIAN BOUDETTE,** | |
| Defendant. | |

## MEMORANDUM OF DECISION

In this adversary proceeding, Plaintiff Tammy Oskerson ("Oskerson") filed a "Motion for Partial Summary Judgment" ("Summary Judgment Motion") and a "Motion for Abstention and Remand" ("Abstention Motion") on May 11, 2021.[1] Defendant Daniel Boudette ("Boudette") filed a Response in Opposition to the Summary Judgment Motion ("Response"),[2] Statement of Genuine Issues,[3] and Affidavit[4] in support of his Response on May 28, 2021. Oskerson filed a Reply to Boudette's Response on June 9, 2021.[5]

---

[1] ECF Nos. 73 and 74, respectively. References to "ECF Nos." refer to the docket in this adversary case. Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.
[2] ECF No. 76.
[3] ECF No. 77.
[4] ECF No. 78.
[5] ECF No. 80.

The parties to this proceeding share a long, litigious past. Boudette and Oskerson were married in 1994. Fourteen years later, they filed for divorce, and a decree of dissolution was entered in 2009. Following the dissolution of their marriage, Oskerson and Boudette entered a new phase in their relationship–divorced, but hopelessly embroiled in litigation related to the decree of dissolution, which included a judgment in favor of Oskerson for $68,293.50, a lien on property owned by Boudette in Montana to secure that judgment, and an award of child support.

Over the last 11 years, the judgment has grown and now allegedly exceeds $189,391.57.[6] Additionally, there has been an ongoing dispute involving child support. The parties are now before this Court disputing whether these debts are dischargeable. Although the parties' pleadings raise a multitude of issues, the primary task for this Court is to determine whether the judgment debt and the child support debt are excepted from Debtor's discharge. To the extent necessary, the Court addresses other issues, such as the judgment lien, and Oskerson's request for attorney's fees.

Having considered the undisputed facts in this case, Oskerson's Summary Judgment Motion is granted in part and denied in part.

## BACKGROUND

### I.  Pre-Bankruptcy Litigation.

This saga began with the entry of a Decree of Dissolution ("Decree") between Oskerson and Boudette by the Arizona Superior Court in and For County of Yavapai ("Arizona State Court") on December 18, 2009.[7] Of particular relevance to this proceeding, the Decree issued by the Arizona State Court concluded that Boudette used community funds to purchase property in Montana (the "Montana Property") as a single man prior to the parties' divorce.[8] The Decree awarded Oskerson $68,293.50, plus interest ("Judgment"). The Judgment corresponded to Oskerson's share of the community funds Boudette used to purchase the Montana Property.[9] Further, the Arizona State Court awarded Oskerson a community lien on the Montana Property.[10] Boudette was given six months from the date of the Decree (through June 18, 2010) to satisfy the Judgment.[11] If he failed to do so, the Decree provided that Oskerson may enforce her interest in the Montana Property.[12] In addition to the Judgment, the Decree also ordered Boudette to pay child support to Oskerson according to the Arizona State Court's Child Support Order dated November 4, 2009. The Child Support Order awarded Oskerson $529.05 per month, comprising both current payments owing and then-existing arrearages.[13]

---

[6] Exhibit S to ECF No. 1.
[7] Exhibit A to ECF No. 1.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.* The Decree refers to foreclosure of a community lien. However, in subsequent litigation before the courts in Montana, it was determined that Oskerson has a valid judgment lien.
[13] Exhibit 2 to ECF No. 80.

Boudette appealed the division of marital property and order of child support set forth in the Decree.[14] The Court of Appeals for the State of Arizona ("Arizona Appellate Court") affirmed the Arizona State Court's Decree in its entirety. Namely, the Arizona Appellate Court affirmed the Arizona State Court's finding that Boudette used community proceeds to purchase the Montana Property and declined to disturb the Arizona State Court's award of child support.[15] The Supreme Court for the State of Arizona ("Arizona Supreme Court") entered an Order denying Boudette's petition for review on October 12, 2011.[16]

Following the entry of the Decree but before Boudette exhausted the appeals process before the Arizona courts, he filed a Declaration of Homestead on the Montana Property dated January 26, 2010.[17] On November 4, 2011, shortly after the Arizona Supreme Court's denial of Boudette's appeal, he quitclaimed his interest in the Montana Property to himself and his new spouse, Toni Easton Boudette ("Toni"), as joint tenants with right of survivorship.[18] Boudette and Toni subsequently recorded an Amended Declaration of Homestead on November 30, 2011.[19]

Oskerson registered the Judgment on September 12, 2012, in Broadwater County, Montana, by filing an Affidavit of Foreign Judgment in the Montana First Judicial District Court ("Montana State Court"), pursuant to the Uniform Enforcement of Foreign Judgments Act ("UEFJA"). *See* Mont. Code Ann § 25-9-501 *et seq*. Okerson took no additional steps to enforce the Judgment.

Boudette filed a Motion to Extinguish Oskerson's Judgment on December 13, 2018 in the Montana State Court.[20] In doing so, he asserted that Arizona's applicable statute of limitations to enforce the Judgment had expired and that, as a result, it was no longer enforceable.[21] The Montana State Court granted Boudette's Motion to Extibnguish on March 13, 2019, determining that Arizona law applied to determine the time limit for execution on the Judgment.[22] Oskerson appealed the Montana State Court's ruling, which was reversed by the Montana Supreme Court on November 12, 2019.[23] In reversing the Montana State Court, the Montana Supreme Court determined that under the UEFJA, foreign judgments domesticated in Montana are enforced in the same manner as Montana judgments.[24] Accordingly, the Montana Supreme Court determined that Montana's ten-year statute of limitations, and not Arizona's five-year statute, applied to the

---

[14] Exhibit C to ECF No. 1.

[15] *Id.*

[16] *Id.*

[17] Exhibit E to ECF No. 1.

[18] Exhibit F to ECF No. 1.

[19] Exhibit G to ECF No. 1.

[20] Exhibit Y to ECF No. 1, ¶ 4.

[21] *Id.*

[22] *Id.*

[23] Exhibit Y to ECF No. 1.

[24] *Id.*

enforceability of Oskerson's award under the Decree.[25] The Montana Supreme Court remanded the proceeding to the Montana State Court for reinstatement of Oskerson's Judgment.

On December 18, 2019, the Montana State Court entered new judgment renewing the Decree and extending its enforceability for an additional ten years, pursuant to Mont. Code Ann. § 27-2-201(1).[26] In doing so, it entered a judgment in favor of Oskerson in the amount of $166,411.62 as of December 9, 2019, with interest to begin accruing from that date at a rate of $18.71 per day. The Montana State Court similarly renewed and extended Oskerson's judgments for attorney's fees and costs associated with the Decree and with Boudette's appeals to the Arizona Appellate Court and Arizona Supreme Court.[27] Three days later, the Montana State Court issued a Writ of Execution. The Writ of Execution directed the levying officer to satisfy the Judgment "out of as herein described the real property of the debtor, Daniel Boudette, not exempt from execution . . ."[28]

On April 15, 2020, following a stay in the proceeding while Boudette pursued a fruitless appeal to the Supreme Court of the United States, the Montana State Court denied Boudette's Motions: (1) to extinguish the renewed Judgment; (2) for a stay and for return of funds, and (3) for relief from judgment.[29] In doing so, the Montana State Court disagreed with Boudette's contention that Montana's homestead exemption statute prevented Oskerson from enforcing her interest in the Montana Property.[30]

Boudette filed a voluntary chapter 7 bankruptcy petition on May 29, 2020.[31] It is a no asset case. He subsequently initiated an adversary proceeding on June 22, 2020,[32] seeking to remove a pending Montana State Court action by Oskerson to register the Arizona Child Support Order in Montana under the Uniform Interstate Family Support Act ("UIFSA").[33] This Court dismissed the action two days later, adhering to the longstanding practice by bankruptcy courts to "avoid incursions into family law matters."[34] Oskerson initiated the present adversary proceeding on August 10, 2020.

## II. The Adversary Proceeding.

Oskerson's Complaint in this proceeding asserted eight causes of action against Boudette.[35] They included the following: (1) res judicata; (2) collateral estoppel and homestead

---

[25] Id.

[26] Exhibit I to ECF No. 1.

[27] Id.

[28] Exhibit L to ECF No. 1.

[29] Exhibit J to ECF No. 1.

[30] Id.

[31] ECF No. 1 in Case No. 20-20147-BPH.

[32] Case No. 20-02011-BPH.

[33] ECF No. 1 in Case No. 20-02011-BPH.

[34] ECF No. 2 in Case No. 20-02011-BPH (quoting *Allen v. Allen*, 275 F.3d 1160, 1163 (9th Cir. 2002)).

[35] ECF No. 1.

exemption; (3) unjust enrichment/constructive trust; (4) state preclusion; (5) property levy under homestead exemption MCA, § 25-13-607; (6) foreclosure on whole property pursuant to MCA § 71-1-222 is appropriate under joint title; (7) domestic support obligation under (UIFSA) is non-dischargeable under 11 U.S.C. § 523(a)(5); and (8) judgment lien secured by real property is non-dischargeable under 11 U.S.C. § 523(a)(15).[36]

Oskerson filed the pending Summary Judgment Motion and Abstention Motion on May 11, 2021 ("Motions").[37] Read together, the Motions request two types of relief. First, Oskerson asserts that that the Court should grant summary judgment in favor of Oskerson and conclude that two debts created by the Decree are nondischargeable in Boudette's bankruptcy: (1) the child support obligation created by the Arizona State Court's Child Support Order, and (2) the Judgment debt.[38] Oskerson also contends that she is entitled to summary judgment regarding the amount and validity of her lien on the Montana Property and asserts that she is entitled to an award of attorney's fees and costs incurred in this adversary proceeding.[39] Finally, Oskerson contends that the Court must abstain from deciding the remaining claims asserted in the Complaint and remand the case to the Montana State Court to resolve the issues pursuant to 28 U.S.C. § 1334(c)(2).[40]

Boudette filed a Response to Oskerson's Motion for Summary Judgment on May 28, 2021.[41] Boudette's Response contends that summary judgment in favor Oskerson with respect to the nondischargeability of both debts created by the Decree is inappropriate. With respect to the child support obligation, Boudette appears to argue that he has already paid the obligation in full. Further, Boudette asserts that Oskerson lacks standing to enforce the child support obligation, a position seemingly based on the fact that the Child Support Order directed Boudette to make all payments to the Support Payment Clearinghouse and not to Oskerson directly.[42]

Turning to the Judgment debt, Boudette attempts to relitigate the statute of limitations issue considered by the Montana State and Supreme Courts and contends that Oskerson's lien has expired and is no longer enforceable, thereby rendering the issue of dischargeability "moot." Additionally, Boudette contends that the Arizona State Court lacked jurisdiction to award Oskerson a lien on the Montana Property in the first place. Furthermore, Boudette contends that the Montana Property is exempt from a forced sale or foreclosure by Oskerson in light of Boudette's Declaration of Homestead–another issue previously decided by the Montana State Court.[43] Boudette's Response fails to substantively address Oskerson's Motion for Abstention and Remand.

---

[36] Id.
[37] ECF Nos. 73 and 74, respectively.
[38] ECF No. 73.
[39] Id.
[40] ECF No. 74.
[41] ECF No. 76.
[42] Id.
[43] ECF No. 74.

Oskerson filed a Reply in support of her Motion for Summary Judgment on June 9, 2021.[44] Her Reply generally asserts that each of the arguments raised in Boudette's Response have already been considered by the state courts in Montana and Arizona and that the assertions by Boudette in this action are nothing more than a last-ditch attempt to challenge the validity and/or enforceability of the final orders and judgments issued by those courts.[45]

## ANALYSIS

Bankruptcy is an effective weapon to thwart or impede a divorce or undo the result obtained after a settled or contested divorce…newly divorced individuals seek a new life, but soon find the financial deal they struck or the decision of the divorce court is very difficult to live with…one spouse may be ordered to pay alimony or child support or both…often, a spouse will be given a lien against property. The lien is often worthless or if it is not, it will not be reduced to cash for a long time…Typically, the spouse who files bankruptcy is the one obligated to pay alimony, child support and make the hold harmless payments; much like the case here.

*In re Ladak*, 205 B.R. 709, 711 (Bankr. D. Vt. 1997).

### I.      Summary Judgment Standard.

Rule 7056 makes Civil Rule 56(a) applicable in adversary proceedings. Pursuant to Civil Rule 56, summary judgment is appropriate "if the moving party shows that there is no genuine issue as to any material fact and the movant is entitled to summary judgment as a matter of law." *Wank v. Gordon (In re Wank)*, 505 B.R. 878, 886 (9th Cir. BAP 2014). The presiding court "may not weigh evidence in resolving such motions, but rather determines only whether a material factual dispute remains for trial." *Id.* A dispute is genuine if "there is evidence for a reasonable fact finder to hold in favor of the non-moving party, and the fact is 'material' if it might affect the outcome of the case." *Id.* (citing *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001). The moving party bears the burden to establish the absence of any genuine issue of material fact. *Wank*, 505 B.R. at 886. When faced with cross-motions for summary judgment, "each motion must be considered on its own merits" to determine whether either of the parties is entitled to judgment under Civil Rule 56. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

### II.     The Bankruptcy Discharge.

A central purpose of the Code is to provide the "honest but unfortunate debtor" a "fresh start," by "provid[ing] a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner*, 498 U.S. 279, 287 (1991) (quoting L*ocal Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)). Section 523(a) of the Code, however, acts as a counterpoint to the Code's "fresh start" policy by

---

[44] ECF No. 80.

[45] *Id.*

excepting certain debts from the discharge awarded to a debtor. Section 523(a) "reflect[s] a conclusion on the part of Congress 'that the creditors' interest in recovering full payment of debts in these categories outweighs the debtors' interest in a complete fresh start.'" *Cohen v. de la Cruz*, 523 U.S. 213, 222 (1998) (quoting *Grogan*, 498 U.S. at 287). The debts created by the Decree and domesticated by Oskerson in Montana fall into such categories. Accordingly, they must be excepted from any future chapter 7 discharge Boudette receives as a matter of law.

## III.    Boudette's Child Support Obligation is Nondischargeable under § 523(a)(5).

Oskerson contends that Boudette's child support obligation reflected in the Child Support Order and Decree is a nondischargeable debt under § 523(a)(5). Section 523(a)(5) excepts from discharge debts for a "domestic support obligations." The term "domestic support obligation" is defined, as relevant here, by section 101(14A) as "one accruing before the date for the order of relief and that is (A) owed to a former spouse; (B) in the nature of support of a child; (C) established by an order of the court; and (D) not assigned to a nongovernmental entity." *In re Kennedy*, 2011 WL 1098463 *6 (9th Cir. BAP 2010).

The undisputed facts in this case establish that Boudette's child support obligation is a "domestic support obligation" that will be excepted from his chapter 7 discharge in accordance with § 523(a)(5). The Child Support Order and Decree were both entered over a decade prior to the filing of Boudette's bankruptcy petition.[46] Thus, it is an obligation that accrued "before the date for the order of relief." The Child Support Order clearly states that Boudette, referred to as "Father," was to pay child support to Oskerson, the "Mother," in monthly payments according to the payment schedules contained in the Child Support Order. Accordingly, it is clearly an obligation "owed to a former spouse" and "in the nature of support."  It is similarly undisputed that Boudette's child support obligation was "established by an order of the court." Accordingly, the child support obligation reflected in the Child Support Order and Decree and domesticated by the Montana State Court is a nondischargeable domestic support obligation under § 523(a)(5).

Boudette's contention that Oskerson lacks standing to enforce the obligation does not change this outcome.[47] While he is correct that the Arizona State Court entered an "Order of Assignment,"[48] the Order appears to direct Boudette's employers to garnish his wages and does not purport to "assign" any of Oskerson's rights under the Decree or Child Support Order to a third party. This argument is not persuasive.

Ultimately, the record in this case makes clear that the Child Support Order has been domesticated in Montana, remains valid, and is enforceable. While Boudette disputes the current balance outstanding on the child support obligation, that issue has no bearing on the dischargeability of the debt itself. Accordingly, no genuine issue of material fact exists, and Oskerson is entitled to summary judgment on the nondischargeability of Boudette's child support

---

[46] Exhibits 1 and 2 to ECF No. 80.

[47] ECF No. 76 at 4. Even if Boudette's assertion that Oskerson "assigned" her right to enforce the Child Support Order to the Montana Department of Health and Human Services Child Support Enforcement Division is correct, this entity is

[48] Exhibit 2 to ECF No. 80.

obligation pursuant to § 523(a)(5). The Court declines to endeavor to calculate the precise amount of Boudette's remaining liability under the Child Support Order. Instead, it anticipates that the parties will return to the Montana State Court to pursue further action associated with enforcing the child support obligation, consistent with applicable non-bankruptcy law. That forum is best suited to resolve any outstanding issues regarding the calculation of Boudette's remaining child support payments.

## IV.    The Judgment Debt is Nondischargeable under §§ 523(a)(5) or (a)(15).

Oskerson contends that the Judgment debt is nondischargeable pursuant to § 523(a)(15). Although Oskerson devotes a significant portion of her Summary Judgment Motion to explaining why that debt is one under § 523(a)(15), as opposed to a domestic support obligation under § 523(a)(5), the distinction is of no consequence in this case. Both categories of debts are excepted from a chapter 7 discharge. *See* § 523(a). With respect to dischargeability, the distinction between these categories is material only in chapter 13 cases where a debtor's discharge encompasses a broader range of debts, including those under § 523(a)(15). *See* § 1328.

Section 523(a)(15) excepts from discharge all debts owed to a former spouse that are incurred by the debtor in the course of a divorce or in connection with a divorce decree that are not domestic support obligations under § 523(a)(5). As explained, the Court need not analyze whether the Judgment is a domestic support obligation because it will be excepted from Boudette's discharge regardless. Accordingly, Oskerson only needs to establish: (1) the Judgment is a debt is owed to a former spouse, and (2) it was incurred by Boudette in the course of a divorce or in connection with a divorce decree. Both are satisfied by looking no further than the Decree itself, which clearly states that Oskerson is owed "$68,293.50, together with legal interest thereon at a rate of 10% per annum from July 31, 2005 secured by a community property lien pursuant to A.R.S. § 25-318(E) in the Montana [P]roperty…"[49]

Oskerson successfully domesticated the Decree (including the Judgment) in Montana.[50] On appeal, the Montana Supreme Court explained:

> The plain language of Montana's UEFJA statutes provides that registered foreign judgments may be enforced or satisfied in the same manner as a judgment of a Montana district court. The period prescribed for the commencement of an action upon a judgment or decree "of any court of record ... of any state" is ten years. When Tammy timely registered the Arizona [J]udgment in Montana on September 12, 2012, it became subject to Montana's enforcement limitations.[51]

It further noted, "Montana's statute of limitations for enforcing judgments or issuing a writ of execution is ten years."[52]  Ultimately, the Montana Supreme Court rejected Boudette's

---

[49] Exhibit 1 to ECF No. 73.
[50] *See* Exhibit H to ECF No. 1.
[51] *Id.* at ¶ 11.
[52] *Id.* at ¶ 18.

arguments and remanded the case to the Montana State Court, "for reinstatement of Tammy's September 2012 registered Arizona [J]udgment."[53]

Finally, the record shows that following remand by the Montana Supreme Court, Oskerson filed a separate action in December 2019 to obtain a new judgment on her Decree.[54] With accrued interest and attorneys' fees, the Montana State Court entered a new judgment for $166,411.62 on December 9, 2019, with interest accruing at $18.71 per day.[55] There is neither a factual nor legal basis for disputing the Judgment is nondischargeable under either §§ 523(a)(5) or (a)(15). The facts are established by prior court decisions and rulings. Oskerson is entitled to summary judgment on the dischargability of the Judgment debt as a matter of law.

### III. Oskerson's Judgment Lien on the Montana Property.

Consideration of the duration and enforceability of Oskerson's judgment lien by this Court is not necessary. Having concluded that the Judgment is excepted from discharge, whether Oskerson has a valid judgment lien is an issue that will almost certainly be considered by the Montana State Court upon the parties' inevitable return to that forum. However, in light of Boudette's contention that the issue of dischargeability is "moot," because Oskerson's lien has "expired," the distinction between Boudette's personal liability for the underlying Judgment and Oskerson's right to enforce any lien she has in the Montana Property is worthy of a brief discussion.

Boudette contends that because Oskerson's lien has expired, the issue of dischargeability is "moot." This argument conflates two distinct concepts: (1) a debtor's *in personam*, or personal liability, on a debt; and, (2) a creditor's *in rem* right to enforce its lien or other interest in property of the debtor. With regards to the distinction between a debtor's personal liability and a creditor's *in rem* right to enforce a lien or other interest in property owned by a debtor, the Ninth Circuit Bankruptcy Appellate Panel ("BAP") explained:

> The Code generically describes a discharge as barring efforts to collect debts personally from the debtor. But a creditor's right to foreclose or otherwise realize on its collateral, which is an *in rem* action against specific property, will often pass through the bankruptcy.

*In re Freeman*, 608 B.R. 228, 234 (9th Cir. BAP 2019) (internal citations omitted). Boudette's filings either gloss over these two concepts or, alternatively, reveal a misunderstanding of the law. In this case, the Judgment debt (i.e., Boudette's *personal* liability to pay Oskerson) is nondischargeable under § 523(a)(5) or (a)(15). Further, if Oskerson has a valid and enforceable judgment lien tied to the Judgment, her *in rem* right to enforce that interest will similarly remain

---

[53] *Id.* at ¶ 19.
[54] Exhibit I to ECF No. 1.
[55] The new judgment recites and explains that it extends and renews the Decree for an additional 10 years.

intact following Boudette's bankruptcy. *See* § 524(a)(2).[56] Excepting or not excepting the Judgment from discharge has no effect on the enforceability any corresponding judgment lien.

Although this Court has elected not to rule on the validity or duration of any judgment lien Oskerson has obtained, the record shows the Montana State Court has previously considered these issues. First, the Montana State Court issued a Writ of Execution that recites entry of the Judgment in 2012, calculates the amount due through December 2019, and describes the Montana Property. It directs the levying officer to satisfy the Judgment out of Debtor's real property, pursuant to Mont. Code Ann. § 25-13-305, which states in part:

> If the judgment be a lien upon real property, the writ shall require the sheriff or levying officer to satisfy the judgment, with interest, out of the real property belonging to the judgment debtor on the day when the judgment was docketed or at any time thereafter . . .

The Writ of Execution recognizes that Oskerson has a lien on the Montana Property and that the Montana Property is subject to execution. In addition, the Montana State Court has rejected Boudette's argument that his claimed homestead exemption prevented execution on the Montana Property.[57] Although these issues appear settled to this Court, if there remain questions regarding the enforceability or duration of Oskerson's interest in the Montana Property, the Montana State Court will have an opportunity to consider those when the parties are before it.

### IV.    Oskerson is Not Entitled to Attorney's Fees.

Finally, Oskerson's Summary Judgment Motion seeks an award of attorney's fees and costs incurred in this adversary proceeding.[58] Generally:

> In federal courts, attorneys' fees ordinarily are nor recoverable by the prevailing party in an action except by contract or by statute. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975). This principle is known as the American Rule.

> In addition to the American Rule, there is no general right to recover attorneys' fees under the Bankruptcy Code. *Heritage Ford v. Baroff (In re Baroff)*, 105 F.3d 439, 441 (9th Cir. 1997). Instead, whether fees may be awarded in bankruptcy proceedings generally depends, in part, on whether the case involves state or federal claims and whether the applicable law allows such fees. A prevailing party in a bankruptcy

---

[56] Section 524(a)(2) provides that "[a] discharge in a case under [Title 11]…operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a *personal liability* of the debtor, whether or not discharge of such debt is waived." (emphasis added). *See also Johnson v. Home State Bank*, 501 U.S. 78, 80 (1991) ("Notwithstanding the discharge, the [secured creditor]'s right to proceed against [the debtor] in rem survive[s] the Chapter 7 liquidation.").

[57] Exhibit J to ECF No. 1. The Montana State Court reasoned that the Judgment corresponded to funds Debtor used to purchase the property, and qualified as an exception to the homestead exemption, for the purchase of the property. Mont. Code Ann. § 25-13-607(1).

[58] ECF No. 73 at 13.

proceeding may be entitled to an award of attorney fees in accordance with applicable state law if state law governs the substantive issues raised in the proceedings. *Id.; see also Am. Express Travel Related Servs. Co. v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1126–27 (9th Cir. 1996).

*Kilborn v. Haun (In re Haun)*, 396 B.R. 522, 527 (Bankr. D. Idaho 2008) (quoting *Bertola v Norther Wisconsin Produce Co. (In re Bertola)*, 317 B.R. 95, 99–100 (9th Cir. 2004).

As explained in *Haun*, there is no general right to attorneys' fees under the Code, and a party is generally not entitled to recover attorneys' fees based on the pursuit of most bankruptcy matters. *In re Jacques,* 2020 WL 6037768 * (Bankr. D. Idaho 2020). Instead, a party's ability to recover attorneys' fees depends on whether that party would be entitled to fees in state court and whether state law governs the substantive issues raised in the adversary proceeding. *Haun*, 396 B.R. 522, 527.

Oskerson appears to rely on § 523(d) in support of her request.[59] Her reliance is misplaced. Section 523(d) provides that if a creditor initiates a dischargeability proceeding stemming from a *consumer debt under § 523(a)(2)* and the *debtor* prevails, the debtor is entitled to an award of reasonable attorneys' fees. This dischargeability proceeding does not relate to a consumer debt under § 523(a)(2), and Oskerson, obviously, is not a debtor. Accordingly, § 523(d) does not entitle Oskerson to an award of attorneys' fees.

Oskerson also contends that an award of attorneys' fees is appropriate under Mont. Code Ann. § 40-4-110(1). Mont. Code Ann. § 40-4-110(1) provides that a court may award attorneys' fees and costs to a party maintaining or defending a proceeding associated with the division of property after a divorce, "after considering the financial resources of both parties." The stated purpose of the statute "is to ensure that both parties have timely and equitable access to marital financial resources for costs incurred before, during, and after" a divorce proceeding. Mont. Code Ann. § 40-4-110(2). First, Mont. Code Ann. § 40-4-110 is inapplicable here because this is not a marital dissolution action. The limited purpose of this adversary proceeding is to determine the dischargeability of certain debts incurred by Boudette under the Decree by applying federal bankruptcy law, not state family law. Second, Oskerson has not demonstrated an inability to pay her own attorneys' fees. *See In re Marriage of Steinbeisser*, 60 P.3d 441, 453 (Mont. 2002) (overruled on other grounds by *In re Marriage of Funk*, 270 P.3d 39 (Mont. 2012)) (holding that an ex-spouse seeking attorneys' fees under Mont. Code Ann. § 40-4-110 must demonstrate an inability to pay her own attorney fees). Accordingly, Oskerson's request for attorneys' fees finds no support in Mont. Code Ann. § 40-4-110.

Finally, Oskerson asserts that she is entitled to an award of attorneys' fees under the Uniform Interstate Family Support Act ("UIFSA"), codified at Mont. Code Ann. § 40-5-1001 *et seq*.[60] Specifically, Oskerson relies on Mont. Code Ann. § 40-5-1033(2), which provides that a court may award attorneys' fees and costs to an oblige who prevails in a child support enforcement action. Similar to Mont. Code Ann. § 40-4-110, the recovery of attorneys' fees

---

[59] ECF No. 73.

[60] *Id.*

under Mont. Code Ann. § 40-5-1033(2) is confined to proceedings associated with enforcing family support obligations. This is no such proceeding. Instead, this is an adversary proceeding to determine the dischargeability of certain debts under §§ 523 and 727 of the Code. Accordingly, Oskerson is not entitled to attorneys' fees under Mont. Code Ann. § 40-5-1033(2). Summary judgment on this issue is denied.

## V. The Court Elects to Hold the Abstention Motion in Abeyance.

The final matter for this Court to address is Oskerson's Abstention Motion.[61] The Abstention Motion requests that this Court abstain from deciding the remaining issues raised in the Complaint, including claims for unjust enrichment/constructive trust, and foreclosure. At its core, the Abstention Motion appears to be an attempt by Oskerson to appropriately return to the Montana State Court to pursue enforcement and/or collection of the Judgment and Child Support debts awarded under the Decree more than 11 years ago. The Court intends to address these issues in a separate decision/or order, but elects to hold the abstention motion in abeyance pending the outcome of a status conference in this case.

## CONCLUSION

This Court joins five other tribunals and determines Boudette must pay Oskerson the amounts awarded under the Decree. Neither this bankruptcy nor Boudette's discharge will relieve him of these obligations. Although the Court fully anticipates that the parties will return to the Montana State Court when Boudette exits bankruptcy, it similarly expects that Boudette's future attempts to contest Oskerson's right to enforce the Judgment as renewed in Montana, or her right to execute on the Montana Property and collect child support will not end favorably. Although Boudette appears to have no qualms continuing this battle in perpetuity, the evidence in the record indicates that his time to finally acknowledge his responsibilities under the Decree is approaching.

The Court will enter a separate order granting Oskerson's Summary Judgment Motion in part and denying it in part for the reasons stated above.

Dated: September 24, 2021.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana

---

[61] ECF No. 74.